## Brown et al. *versus* Torrence.

1. Without a contract or some relation of privity as to the use to be made of land sold, the vendee stands to his vendor just as he does to others, and the maxim applies *sic utere tuo ut alienum non lædas*.

2. Where land is injured by negligence in mining coal underneath it, or the crops and vegetation thereon are injured by the heat and smoke from coke ovens, the owner is entitled to a verdict for such damages as the jury believe from the evidence he has thereby sustained.

November 21st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Fayette county :* Of October and November Term 1878, No. 106.

Case by David M. Torrence against Samuel S. Brown, impleaded with J. M. Schoonmaker, administrator of the estate of William H. Brown, deceased.

At the trial before Willson, P. J., it appeared that on the 14th day of June 1870, John K. Ewing sold and conveyed to David M. Torrence, the surface of a tract of land situate in Tyrone township, Fayette county, containing ninety-eight acres; for $7000. Prior to this, in 1867, Ewing had sold the coal underlying this surface to William H. Brown, deceased, one of whose administrators is plaintiff in error. Before the sale by Ewing to Torrence, William H. Brown had erected coke-ovens on a portion of the surface sold from the original tract of which the Torrence purchase was a part, and was engaged in the manufacture of coke at the time of the sale by Ewing to Torrence, using coal from under the Torrence surface. On the 14th day of June 1870, David M. Torrence conveyed to John M. Cochran five acres and fifty-eight perches, from the western part of his land, for the purpose, as the plaintiff in error alleged, of erecting coke-ovens thereon to be used in the manufacture of coke. For this he received $200 per acre. These five acres and fifty-eight perches John M. Cochran subsequently conveyed to Brown & Cochran, a

[Brown *v.* Torrence.]

firm of which the said William H. Brown was a member. Between two and three hundred coke-ovens were erected by Brown & Cochran on these five acres, in 1871 and 1872, and they have since been almost continually used in the manufacture of coke. The first-mentioned ovens and improvement are known as Sterling Mines, the latter as the Jimtown Works.

Torrence brought this action for damages for alleged injury, by the cracking and sinking of the surface of his land, by the mining of the coal underneath it, and the loss thereby of a surface stream; for the pollution of Hickman run, above his land, by the sulphar water from the pit's mouth, and by the ether and refuse from the ovens on the five-acre-tract; and for the injury to all vegetation upon his farm by the smoke, gas, and heat from the ovens at both Sterling Mines and Jimtown Works.

The plaintiff, inter alia, submitted the following points, to which are appended the answers of the court:—

3. That if the jury believe, from the evidence, that defendants' intestate mined the coal under plaintiff's land, and removed the same, without leaving proper and sufficient ribs or pillars to support the surface, or, in lieu of ribs and pillars, set up posts or other supports of insufficient number and strength to support said surface in consequence of which said surface fell in, cracked and sunk to the damage thereof and of the other property of plaintiff, then the plaintiff is entitled to a verdict for such damages as the jury believe, from the evidence, he has sustained, not only in the injury to land actually fallen, sunken or cracked, but the effect thereof upon the whole of plaintiff's land.

Ans. "Affirmed."

6. That if the jury believe, from the evidence, that the water of Hickman run, where it passes over plaintiff's land, has been corrupted, fouled and polluted, and rendered unfit for use, by reason of the water, ashes, dirt, &c., from defendants' intestate's mines and coke-works being discharged and emptied into said run, then the plaintiff is entitled to recover damages therefor to such an amount as the jury believe, from the evidence, said plaintiff has sustained.

Ans. "If defendants' intestate polluted Hickman run, the plaintiff is entitled to recover at least *nominal* damages, and if there is any evidence showing *specific* damages with reference to the injury done plaintiff by defendants' intestate polluting that run, then the plaintiff would be entitled to *more* than nominal damages."

7. That if the jury believe, from the evidence, that the land or crops of said plaintiff, or any portion thereof, have been injured by the heat, smoke or dirt from the coke-ovens of the defendants' intestate, the plaintiff is entitled to a verdict for such damages as the jury believe, from the evidence, he has sustained thereby.

[Brown *v.* Torrence.]

·Ans. "Affirmed."

Defendants' sixth point, which the court refused, was as follows:

That if plaintiff's vendor, before the sale to plaintiff, had sold a part of his land and the coal under the residue to the defendants' intestate, and if, at that time, there were some coke-ovens in use on that part of the land so sold, and the defendants' intestate had erected others before the sale to plaintiff, and was then using them in the making of coke, the plaintiff cannot recover in this action for any damage done to his land by the smoke and heat caused by the continued use of said ovens in an ordinary and proper manner.

Verdict for plaintiff for $1150, and after judgment thereon, defendants took this writ, assigning for · error, inter alia, the answers to the foregoing points.

*William H. Playford* and *Charles ·E. Boyle,* for .plaintiffs in error.—We contend that Torrence had no right to recover for injury done his crops and fruit-trees by the smoke produced by the manufacture of coke from coal sold from under his land for that purpose by his vendor, and with the business actually going on at the time of his purchase.

[Chief Justice AGNEW.—Do you mean to say that when he bought he had notice that the coke was to be burned?]

We say that the coke was being burned when he bought, and he did so with his eyes open.

[Chief Justice AGNEW.—Was there any evidence to sustain the seventh point?]

There was.

In Sanderson *v.* The Pennsylvania Coal Co., 5 Norris 401, this court laid considerable stress on the fact that Sanderson, *before he purchased* the tract of land, traced Meadow brook to its source, and that its purity·was one of the inducements to his purchase. This was several years before the establishment of the colliery from which the water came that polluted Meadow brook. In the language of the opinion in this case, is not the one at bar exceptional in its surroundings and facts? From necessity, must not the principles of that case be relaxed? In our case the coal was sold out before Torrence purchased, to be mined. To mine it, was to discharge the sulphur-water held by the coal; if the right to discharge it was an incident to the grant, the natural flow of it after it left the pit's. mouth could work no injury making Brown & Cochran answerable in damages.

*Nathaniel Ewing,* for defendant in error.—We claim that if defendants wish to carry on this business, they must either purchase the adjoining lands or pay for the privilege of carrying it on, to the landowner, and to sustain this position we rely upon the following authorities: Richards's Appeal, 7 P. F. Smith 113; St. Helen's

[Brown v. Torrence.]

Smelting Company v. Tipping, 11 H. L. Cas. 642; Bainbridge on Mines, § 468; Smith v. Phillips, 8 Phila. 10, and cases there cited; Sanderson v. Pennsylvania Coal Co., *supra.*

[Justice SHARSWOOD.—There is nothing in the testimony here to show the nature of the damage done?]

We claim that the vegetation on seven or eight acres near the mine was destroyed, as well as the trees, by the heat and sulphurous smoke.

The judgment of the Supreme Court was entered, November 28th 1878,

PER CURIAM.—The verdict of the jury establishes the fact that the surface of the plaintiff's land was injured by the negligence of the defendants' intestate in mining the coal underneath, and that the grass and vegetation have been injured by the deleterious gases thrown off from the coke-ovens of the defendants'. It does not appear from the evidence that the plaintiff stood in any relation of contract or of privity to justify these injuries. The mere fact that one man sells land to another cannot of itself justify any use the vendee afterwards chooses to apply his land to. He stands to his vendor without a contract, or some relation of privity, just as he does to others, and the maxim applies *sic utere tuo, ut alienum non lœdas.*　　　　　　　　　　　　　　　　　Judgment affirmed.